(39 Misc. Rep. 18.)

### PEOPLE ex rel. McDONALD v. GROUT.

(Supreme Court, Special Term, New York County. October, 1902.)

1. RAPID TRANSIT COMMISSION—EQUIPMENT—LIABILITY OF CONTRACTOR.

Under the act creating the rapid transit commission, the word "equipment" includes not only motors and cars, but the ways, mechanisms, implements, and devices, of every nature whatsoever, used for the transmission of power, whether such equipment be situate on or near or separate from the railway; and it is the duty of the contractor to bear the cost of constructing, in the side walls of the subways, ducts for conducting electricity, and the rapid transit commission cannot, by voting its cost to be extra work, change its character to "construction," payable by the city.

Application by the people, on the relation of John B. McDonald, for a writ of mandamus to Edward M. Grout, comptroller. Denied.

Strong & Cadwalader, for petitioner.

George L. Rives, Corp. Counsel, for respondent.

O'GORMAN, J.    This is an application for a writ of mandamus requiring the comptroller of the city of New York to pay a voucher for $400,000 issued by the rapid transit commission to the contractor for extra work for placing ducts in the tunnel. Under the contract for the construction of the underground rapid transit railway, the city is to bear the cost of construction, and the contractor is to take a lease of the road at a stipulated rental, and bear the cost of its equipment and maintenance. The contract provides that the motive power shall be electricity or compressed air, which shall be so used as to involve no combustion in the tunnels, or any injury to the purity of the air in the tunnels. It further provides that the contractor's plans and methods of equipment are subject to the approval of the board of rapid transit commissioners. In compliance with this latter provision, the contractor proposed to the rapid transit commissioners that electricity, and not compressed air, be adopted as the motive power; that the power be delivered to the trains through a third rail, or equivalent conductor; "and that the current should be carried in conduits placed in suitable chambers in the side walls of the subway." The board approved this plan by the following resolution:

"Resolved, that the adoption by John B. McDonald, contractor, of electricity for the motive power for the rapid transit railroad in the boroughs of Manhattan and the Bronx, now under construction, be, and the same hereby is, approved; that the conduits for such electricity may be placed in ducts in the side walls of the tunnel, subject, however, to the approval of the plans therefor by the chief engineer; and that the electrical conduits may be installed in such ducts, but subject to plans to be approved by the chief engineer; but provided, however, that the cost of such conduits and installation be borne by the contractor, as part of the cost of construction under the contract between him and the city."

The contractor protested against the final part of this resolution, and renewed his request previously made that the "additional cost made necessary by the construction of the vitrified ducts or conduits in the tunnel walls, and the expense of additional excavation required by such change," should be paid for as extra work. Thereafter the board, by a majority vote, determined that the additional portion of the tunnel constructed for electrical cables, and including the mason-work chambers in which the cables are laid, is part of the road, and not part of the equipment, and should be regarded as extra work in the construction. This action of the rapid transit commissioners cannot be upheld. While acting within the authority delegated to them, their action will not be interfered with; but, where it is claimed they have gone beyond the scope of their authority, their conduct will be reviewed by the courts. Concededly, under the statute, the commissioners have no right or power to designate as work of construction what the legislature has declared to be equipment. The counsel for the petitioner upon the argument

admitted that in a plain case the aid of the court might be invoked by the aggrieved party, but it must be obvious that the simplicity or complexity of the case cannot affect the legal rights of the parties. In Re Rapid Transit R. Com'rs, 5 App. Div. 290, 39 N. Y. Supp. 750, the appellate division, speaking of another provision of the statute, said, "The rapid transit commissioners have no power to fetter the action of the court, and they have no right to deprive the contractor of this provision of the law by any restrictions in the contract;" and, it may be added, they have no power to deprive the city of its rights under the statute. Under the act creating the commission, the word "equipment" is given a much broader significance than it usually receives. It includes not only motors and cars, but also, among other things, all power houses, real estate upon which power houses shall rest, wires, ways, conduits, mechanisms, implements, and devices of every nature whatsoever used for the transmission of motive power, whether such equipment be situate on or near or separate from the railway. It is clearly the duty of the contractor to supply at his own cost the rolling stock and all means of propulsion. These ducts or tubes placed by the contractor in the side walls of the tunnel are no necessary part of the permanent structure. They are avowedly to be used for the sole purpose of transmitting power. The mere permission given by the board to the contractor to locate the tubes in the side walls of the subway is not sufficient to make the work in question work of construction. The board might have refused its permission. It might have required the contractor to locate the tubes at the top of the tunnel, between the exterior upper surface and the bed of the street, or in a trench removed to one side of the tunnel, or in other streets parallel to the streets through which the railroad will run, with occasional spurs to the line of the railroad. If these tubes as now being laid and the increased excavation will cost upwards of $1,200,000, as claimed by the petitioner, the cost would probably be much greater if one of the other methods were adopted, and certainly in none of these cases could the tubes or the necessary excavation be regarded as a part of the construction. The fact that for the convenience of the contractor, and the better operation of the road, he was allowed to insert the tubes in the walls of the tunnel, does not make the tubes any the less a part of the equipment, as defined by the act. They are an incident of the equipment, and nothing more. It will not be contended that they are an essential part of the structure. If not needed as a means of propulsion, they serve no purpose whatever. They are simply a way, conduit, or device for transmitting power; and, being part of the equipment, the rapid transit commissioners had no power to treat any part of the work as construction, or to award the contractor extra compensation therefor. The claim that the equipment intended by the statute is something in the nature of machinery or mechanism, or something otherwise separable from the structure, is unfounded. The tubes which will convey the electricity from the power house on the Hudson river, through the public streets to the line of the railroad, are equipment, but will be connected in a very permanent fashion with the railroad

itself. While it may have been contemplated that a part of the· equipment would be separable from the road, there is nothing in the· language of the act which in express terms or by necessary implication indicates that all the equipment must be separable. Indeed, the· act expressly speaks of the equipment being "on or near or separate" from the road. The rules as to fixtures invoked by the petitioner have no application. This controversy turns upon the enlarged sig-- nificance to be given to the word "equipment," as defined by the· statute; and it seems to be quite clear that while the city was to pay for and become the owner of the permanent structure, which· was always to be available for the carriage of passengers and property, the legislature intended that the contractor should take every risk and bear every expense connected with the motive power and· the means of operation. The lease to the contractor is to run for· 50 years, and if, during that period, new means of propulsion or· new methods of applying old forms should render these tubes or ducts useless, the loss should fall upon the contractor, and not upon· the city.

Application for a mandamus denied.